**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | | |
|---|---|---|
| **BURTON WILLIFORD, individually** | § | **Docket No. _____** |
| **and on behalf of all others similarly** | § | |
| **situated,** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Plaintiff,** | § | |
| | § | **CLASS/COLLECTIVE ACTION** |
| **v.** | § | **PURSUANT TO 29 U.S.C. § 216(b)/** |
| | § | **FED. R. CIV. P. 23** |
| **RICE ENERGY, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### I.    SUMMARY

1.      Plaintiff Burton Williford ("Williford") brings this lawsuit to recover unpaid overtime wages and other damages from Rice Energy, Inc. ("Rice Energy" or "Defendant") under the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111 *et seq.*, ("the Ohio Wage Act"), and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code §4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts").

2.      Rice Energy is an oil and natural gas company operating primarily in Pennsylvania and Ohio in the Marcellus, Utica, and Upper Devonian Shales.[1] To do so, Rice Energy employs oilfield personnel to carry out its work.

3.      Williford worked for Defendant as a Drilling Fluid Engineer.[2]

4.      Plaintiff and the other workers like him regularly worked for Defendant in excess of forty (40) hours each week.

---

[1]      http://www.riceenergy.com/operations#/where-we-operate.

[2]      Drilling Fluid Engineers are also sometimes referred to as Mud Engineers. As used in this Complaint, the term "Drilling Fluid Engineer" is intended to refer to both titles.

5.      But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

6.      Instead of paying overtime as required by the FLSA and Ohio Wage Acts, Defendant improperly classified Plaintiff and those similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation.

7.      This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## II.      JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.      The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Rice Energy's corporate headquarters are located in this District.

## III.      THE PARTIES

11.     Williford worked for Rice Energy as a Drilling Fluid Engineer from approximately June 2014 until April 2017.

12.     Throughout his employment with Rice Energy, Plaintiff was paid a day-rate with no overtime compensation and was classified as an independent contractor.

13.     Williford's consent to be a party plaintiff is attached as Exhibit A.

14.     Plaintiff brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Defendant' day-rate system.  Defendant paid each of these workers a flat amount for each day worked and failed to pay them overtime for all

hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA and Ohio Wage Acts.

15.     The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **CURRENT AND FORMER OILFIELD WORKERS EMPLOYED BY, OR WORKING ON BEHALF OF RICE ENERGY, INC. WHO WERE CLASSIFIED AS INDEPENDENT CONTRACTORS AND PAID A DAY RATE (**"Putative Class Members")

16.     Williford also seeks class certification of such a class under FED. R. CIV. P. 23 under the Ohio Wage Acts.

17.     Defendant **Rice Energy, Inc.**, is a Delaware corporation doing business throughout the United States, including in Pennsylvania and Ohio. Rice Energy may be served by serving its registered agent for service of process, **The Corporation Trust Company, at 1209 Orange St., Wilmington, DE 19801**.

## IV.     COVERAGE UNDER THE FLSA

18.     At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

19.     At all times hereinafter mentioned, Defendant has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

20.     At all times hereinafter mentioned, Defendant has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person

and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

21.     At all times hereinafter mentioned, Plaintiff and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

22.     As will be shown through this litigation, Rice Energy treated Plaintiff the Putative Class Members as employees and uniformly dictated the pay practices Plaintiff and its other employees (including its so-called "independent contractors") were subjected to.

23.     Rice Energy's misclassification of Williford as an independent contractor does not alter his status as an employee for purposes of the FLSA and Ohio Wage Acts.

## V.     FACTS

24.     Defendant is an oil and natural gas company operating primarily in Pennsylvania and Ohio in the Marcellus, Utica, and Upper Devonian Shales. To complete their business objectives, Defendant hires personnel to perform work as drilling fluid engineers or mud engineers.

25.     Many of these individuals worked for Defendant on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

26.     Rice Energy classified the Putative Class Members as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

27.     For example, Williford worked for Defendant as a Drilling Fluid Engineer from approximately August 2016 until February 2017. Throughout his employment with Defendant, he was classified as an independent contractor and paid on a day-rate basis.

4

28.     As an independent contractor, Plaintiff's primary job duties included monitoring fluid activities at jobsites, operating oilfield equipment, coordinating transfer of fluids between rigs, controlling fluid within defined specifications, and building and maintaining various fluid systems associated with the drilling and completion of wells, as needed. Plaintiff worked in excess of 40 hours each week while employed by Defendant, often for weeks at time.

29.     The work Plaintiff performed was an essential and integral part of Defendant's core business.

30.     During Plaintiff's employment with Defendant while he was classified as an independent contractor, Rice Energy and/or the company it contracted with exercised control over all aspects of his job.

31.     Rice Energy did not require any substantial investment by Plaintiff in order for him to perform the work required of him.

32.     Rice Energy determined Plaintiff's opportunity for profit and loss. Plaintiff was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in his same job position) to perform their job duties.

33.     Rice Energy and/or the company it contracted with controlled all the significant or meaningful aspects of the job duties performed by Plaintiff.

34.     Defendant and/or the company it contracted with determined the hours and locations Plaintiff worked, tools used, and rates of pay received.

35.     Even though Plaintiff often worked away from Rice Energy's offices without the presence of a direct Rice Energy supervisor, Rice Energy still controlled all aspects of Plaintiff's job activities by enforcing mandatory compliance with Rice Energy's and/or its client's policies and procedures.

36.     No real investment was required of Plaintiff to perform his job.

5

37.     More often than not, Plaintiff utilized equipment provided by Defendant and/or its clients to perform his job duties.  Plaintiff did not provide the equipment they worked with on a daily basis.

38.     Rice Energy and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Plaintiff worked.

39.     Plaintiff did not incur operating expenses like rent, payroll, marketing, and insurance.

40.     Plaintiff was economically dependent on Rice Energy during his employment.

41.     Defendant directly determined Plaintiff's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Rice Energy.

42.     Rice Energy directly determined Plaintiff's opportunity for profit and loss.  Plaintiff's earning opportunities were based on the number of days Rice Energy scheduled him to work.

43.     Very little skill, training, or initiative was required of Plaintiff to perform his job duties.

44.     Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Defendant and/or its clients. Virtually every job function was pre-determined by Defendant and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

45.     Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

46.     The Putative Class Members did not have any supervisory or management duties.

47.     Plaintiff was not employed by Defendant on a project-by-project basis.  In fact, while Plaintiff was classified as an independent contractor, he was regularly on call for Defendant and/or its clients and was expected to drop everything and work whenever needed.

48.     All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

49.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

50.     Defendant' policy of failing to pay their independent contractors, including Plaintiff, overtime violates the FLSA and Ohio Wage Acts because these workers are, for all purposes, employees performing non-exempt job duties.

51.     It is undisputed that the contractors are operating oilfield machinery, performing manual labor, and working long hours out in the field.

52.     Because Plaintiff (and Defendant's other independent contractors) was misclassified as an independent contractor by Defendant, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

53.     Defendant's day-rate system violates the FLSA and Ohio Wage Acts because Plaintiff and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## VI.     FLSA VIOLATIONS

54.     As set forth herein, Defendant has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours

without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

55.     Defendant knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Defendant failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

56.     Accordingly, Plaintiff and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### VII.    OHIO WAGE ACT VIOLATIONS

57.     Williford brings this claim under the Ohio Wage Act as a Rule 23 class action.

58.     The conduct alleged violates the Ohio Wage Act (O.R.C. §§4111).

59.     At all relevant times, Defendant was subjected to the requirements of the Ohio Wage Act.

60.     At all relevant times, Defendant employed Williford and each Class Member with Ohio state law claims as an "employee" within the meaning of the Ohio Wage Act.

61.     The Ohio Wage Act requires employers like Defendant to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Williford and each member of the Ohio Wage Act Class are entitled to overtime pay under the Ohio Wage Acts.

62.     Defendant had a policy and practice of misclassifying Williford and each member of the Ohio Wage Act class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

63.     Williford and each member of the Ohio Wage Act Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

64.     Williford and each member of the Ohio Wage Act Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendant, as provided by the Ohio Wage Act.

## VIII.   CLASS AND COLLECTIVE ACTION ALLEGATIONS

65.     Plaintiff incorporates all previous paragraphs and alleges that the illegal pay practices Defendant imposed on Plaintiff were likewise imposed on the Putative Class Members.

66.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and Ohio Wage Acts.

67.     Numerous other individuals who worked with Plaintiff indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

68.     Based on his experiences and tenure with Defendant, Plaintiff is aware that Defendant's illegal practices were imposed on the Putative Class Members.

69.     The Putative Class Members were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

70.     Defendant's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

71.     Plaintiff's experiences are therefore typical of the experiences of the Putative Class Members.

72.     The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

73.     Plaintiff has no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Plaintiff has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

74.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

75.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Defendant will reap the unjust benefits of violating the FLSA and applicable state labor laws.

76.     Furthermore, even if some of the Putative Class Members could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.

77.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

78.     The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.     Whether Defendant employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA and Ohio Wage Acts;

    b.     Whether the Putative Class Members were improperly misclassified as independent contractors;

    c.     Whether Defendant's decision to classify the Putative Class Members as independent contractors was made in good faith;

      d.      Whether Defendant's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

      e.      Whether Defendant's violation of the FLSA and Ohio Wage Acts was willful; and

      f.      Whether Defendant's illegal pay practices were applied uniformly across the nation to all Putative Class Members.

79.      Plaintiff's claims are typical of the claims of the Putative Class Members. Plaintiff and the Putative Class Members sustained damages arising out of Defendant's illegal and uniform employment policy.

80.      Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

81.      Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

### IX.    JURY DEMAND

82.      Plaintiff demands a trial by jury.

### X.    RELIEF SOUGHT

83.      WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

      a.      An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.      For an Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid back wages due to Plaintiff and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

c.      For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

d.      For an Order appointing Plaintiff and his counsel as Class Counsel to represent the interests of both the federal and state law classes;

e.      For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

f.      For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:   */s/ Joshua P. Geist*
        Joshua P. Geist
        PA. I.D. No. 85745
        **GOODRICH & GEIST, P.C.**
        3634 California Ave.
        Pittsburgh, PA 15212
        Tel: (412) 766-1455
        Fax: (412)766-0300
        josh@goodrichandgeist.com

        **AND**

        Michael A. Josephson
        Texas Bar No. 24014780
         *(Pending Pro Hac Vice)*
        Andrew W. Dunlap
        Texas Bar No. 24078444
        *(Pending Pro Hac Vice)*
        **JOSEPHSON DUNLAP LAW FIRM**
        11 Greenway Plaza, Suite 3050
        Houston, Texas 77046
        713-352-1100 – Telephone
        713-352-3300 – Facsimile
        mjosephson@mybackwages.com
        adunlap@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**